UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL HOGUE<br><br>                    Plaintiff,<br>          vs.<br><br>FREDERICK CHEVROLET CADILLAC HYUNDAI INC.;<br>JONESTOWN BANK & TRUST CO.;<br>JOHN DOES 1-10<br>                    Defendants. | Civil No.  1:12-CV-708<br><br>Jury Trial of Eight (8) Jurors Demanded |

**FIRST AMENDED COMPLAINT - CIVIL ACTION**

I.     **Jurisdiction and Venue**

          1.     Jurisdiction arises under 15 U.S.C. §1691e(e) for claims under the Equal Credit Opportunity Act, 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the court. Supplemental jurisdiction over Plaintiffs' state law claims is granted by 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

          2.     Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

II.    **Parties**

          3.     Plaintiff Michael Hogue is a natural person who resides at 661 Golden Eagle Way, Lancaster, PA 1760.

          4.     Defendant, Frederick Chevrolet-Cadillac, Inc. d/b/a Fredrick Certified Pre-Owned of Hershey, PA, ("FCC" or "Dealer"), is a corporation licensed to do business in the Commonwealth of Pennsylvania, regularly conducting business in the Commonwealth of Pennsylvania and having a principal place of business located at 1280 E. Chocolate Ave, Hershey, PA 17033 at all times relevant, acting alone or in concert with others, formulated,

directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

5. Defendant, Jonestown Bank and Trust Company ("JBT" or "Creditor") is a corporation licensed to do business in the Commonwealth of Pennsylvania, regularly conducting business in the Commonwealth of Pennsylvania and having a principal place of business located at 2 West Market Street, Jonestown, PA 17033. At all times relevant, creditor engaged in, among other banking activities, the buying of auto loan paper originated by installment sellers like Dealer.

6. Defendant John Doe 1 is a natural person employed by Defendant Dealer as a salesperson for the dealership believed to be "Jeremy Crane".

7. Defendants, John Does 2-10, is a moniker for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom.  Each of these parties are incorporated as Defendants in each and every Count and averment listed above and below.

### III. Factual Allegations

8. At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

**A. Formation of Purchase and Finance Agreements for the Subject Vehicle**

9. On or around October 20, 2011, Plaintiff viewed a newspaper advertisement of a tent sale in which several vehicle dealers, including Dealer, would offer advertised cars for sale.

10. Plaintiff visited the defendants' tent sale location intending to trade in his 2006 Lincoln Zephyr for a pre-owned 2007 Chrysler 300 advertised by Dealer.

2

11. While at the dealership, plaintiff was shown by defendant FCC/John Doe 1 the pre-owned 2007 Chrysler 300, bearing Vehicle Identification 2C3LA43R07H860079 (hereinafter "the Vehicle").

12. John Doe 1 advised plaintiff they could not take plaintiff's Zephyr in trade as part of the Vehicle purchase.

13. John Doe 1 promised plaintiff the Vehicle if plaintiff agreed to voluntary repossession of the Zephyr.

14. John Doe 1 promised plaintiff the voluntary repossession would not adversely affect plaintiff's credit because the new car payment for the Vehicle would cancel out any negative credit effect of discontinuing payments for the Zehpyr.

15. On or about October 20, 2011, Plaintiff signed a Buyer's Order with FCC for purchase of the Vehicle in the amount of $24,486.

16. On or about October 20, 2011, Dealer directed Plaintiff to another individual at the FCC sales station, believed to be a representative of JBT, to complete a financing agreement with JBT specifying finance terms for payment of the Buyer's Order purchase price for the Vehicle.

17. The financing agreement contained language which rendered JBT's agreement to its terms conditional:

"This Offer and Agreement will become void if it is not accepted by the Lender [Jonestown Bank and Trust Co.] within two business days of the date the Borrower [plaintiff] signs…"

18. Plaintiff signed the financing agreement to finance purchase of the Vehicle.

19. To the extent that JBT did not accept financing of Plaintiff's purchase of the Vehicle, FCC was the holder of such financing (see Ex. "A", Affidavit of FCC's manager, James

B. Allison).

### B. Defendants' Denial of Credit and FCC's Repossession of the Subject Vehicle

20. Plaintiff took possession of the Vehicle and left the defendant dealership.

21. Approximately three (3) days later, the Vehicle's transmission failed causing the Vehicle to be towed to FCC for repair.

22. FCC provided plaintiff with a loaner car for his use during the promised period of repair.

23. On or about October 24, 2011, JBT advised FCC that it would not accept assignment of the financing from FCC for the Vehicle.

24. JBT never provided any written notice to plaintiff that it had denied financing of the Vehicle.

25. Weeks later plaintiff contacted FCC and was informed that FCC would not return the Vehicle because JBT had denied plaintiff financing based on the voluntary repossession counseled by FCC.

26. In the aforesaid phone conversation, FCC advised plaintiff that it reported the loaner car given to plaintiff as stolen.

27. Plaintiff contacted the JBT numerous times to understand why his financing was denied and was finally informed that JBT had no record of plaintiff having applied for financing with JBT for the Vehicle.

28. Neither defendant provided plaintiff with a written explanation of the denial of credit.

29. Plaintiff has been and will continue to be financially damaged due to defendants' actions in stealing the Vehicle from him including but not limited to damage to his credit and

4

loss of his full time employment due to lack of transportation.

30. The established business practices described above and below were part of a systematic business practice called "spot delivery" or "yo-yo delivery" intended to secure for Defendants unearned FCC profits.

31. The established "spot delivery" or "yo-yo delivery" practices described above and below are unlawful, deceptive, misleading, and fraudulent.

32. The established "spot delivery" or "Yo-Yo delivery" practices described above and below commenced prior to the execution of any agreement, were designed and intended to induce the Plaintiff to enter into an agreement, and persisted after the apparent agreement was consummated.

33. During all times relevant the Defendants deceived the Plaintiff into believing Defendants' actions were lawful, and/or concealed their actions' unlawful nature.

34. At all times relevant, Plaintiff relied on Defendants' apparent and claimed experience, sophistication and expertise in selling and/or financing motor vehicles and allowed the Vehicle to be repossessed.

35. At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

36. The defendants held managerial and/or supervisory control over all of their agents and all of the policies and procedures involved and/or at issue in this matter.

37. The defendants directly and personally participated in the development, adoption and/or execution of the policies and practices at issue herein.

**Causes of Action**

### **COUNT I – Violation of ECOA**
*(Plaintiff v. Defendants)*

38. Plaintiff incorporates by reference all of the above paragraphs of this Complaint.

39. This Court has jurisdiction to decide claims brought under the Equal Credit Opportunity Act, 15 USC 1691, *et seq*, pursuant to 15 USC 1691e(f).

40. Plaintiff is an "applicant" as the term is defined in the ECOA, 15 USC §1691a(b).

41. Defendants are each a "JBT" as the term is defined in the ECOA, 15 USC §1691a(e).

42. Plaintiff completed a credit application and/or one was completed on his behalf and otherwise applied to Defendants for credit in connection with his purchase of the subject vehicle from FCC.

43. Under the provisions of the ECOA, Defendants were required to give written notice of their decision on that credit application to Plaintiff within thirty (30) days of receipt.

44. In the event that such credit was approved, the provisions of ECOA permitted Defendants to provide that notice by means other than written communication, 15 USC §1691(d)(1) and (2).

45. In the event that such credit was denied, then after taking such adverse action on Plaintiff' credit application for the subject vehicle, Defendants were required to provide written notice of that adverse action within 30 days of taking that action, 15 USC §1691(d).

46. The financing agreement's contingent approval language is not compliant with the foregoing provisions of ECOA which require written notice and explanation of any denial of credit.

47. Rather than comply with the adverse action requirements of ECOA, FCC

6

conducted repossession of the Vehicle while in its repair shop.

48. FCC's repossession of the subject Vehicle was plaintiff's only notice that he was denied credit by defendants to purchase the subject vehicle, effectively terminating the sale transaction.

49. FCC's revocation of credit to Plaintiff, JBT's denial of credit to Plaintiff and the vehicle repossession by JBT each constituted an "adverse action" as the phrase is defined in the ECOA, 15 USC §1691(d).

50. Defendants failed or refused to provide that written notice of denial or revocation of credit to Plaintiff in violation of 15 USC §1691(d).

51. Defendants, at all times, was required to maintain such records or other data relating to such loans as may be necessary to evidence compliance with ECOA or to enforce any action pursuant to the authority under the Act, 15 USC §1691b.

52. Upon information and belief, Defendants failed or refused to maintain records of that transaction which would fulfill the provisions of ECOA, in violation of 15 USC §1691b.

## **COUNT II – FRAUD**
*(Plaintiff v. Defendants)*

53. Plaintiff incorporates by reference all of the above paragraphs of this Complaint.

54. Prior to the execution of both sets of contracts, the Defendants' agents, including but not limited to, Defendant John Doe 1, and those identified on any sales documents for Vehicle who, expressly or impliedly made the following representations about the Vehicle and the transactions:

   a. By its failure to comply with the adverse action notice requirements of ECOA, JBT represented financing of the Vehicle had been approved by it;

   b. FCC represented that the purchase and financing were final and complete upon Plaintiff signing the Buyer's Order and financing agreement;

7

      c. FCC represented financing of the Vehicle's purchase would not be affected by voluntary repossession of plaintiff's Zephyr;

      d. FCC was transferring Title and registration lawfully to the Vehicle;

      e. FCC misrepresented the condition of the Vehciel in its sale presentation to plaintiff by failing in its affirmative duty to disclose under Pa. Code §301.2(iv) that the Vehicle's transmission was damaged, defective or so deteriorated as to require replacement.

55. The misrepresentations and omissions identified in the immediately preceding paragraphs were known to Defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to purchase the Vehicle at the price listed in the purchase agreement.

56. The Defendants knew that the Plaintiff had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

57. The Plaintiff relied on the Defendants' misrepresentations and was induced to sign the RISC and other documents related to which they apparently and ostensibly purchased and financed the aforementioned vehicle.

58. As a result of the aforementioned conduct, the Plaintiff suffered the damages outlined above and below, including but not limited to:

      a. Loss of full time employment;

      b. increased purchase costs;

      b. damaged credit rating and reputation;

      c. deprived of the use and enjoyment of the vehicle;

      d. incurred cost of replacement vehicles;

      e. spent time resolving problems created by Defendants' breach;

  f. incurred other incidental and consequential damages, including emotional distress;

  g. incurred increased interest and other expenses for financing the purchase of the vehicle.

59. The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

## COUNT III - CONVERSION
*(Plaintiff v. FCC)*

60. Plaintiff incorporates by reference all of the above paragraphs of this Complaint.

61. The actions of FCC in repossessing the car as above described constituted conversion of plaintiff's Vehicle.

62. Plaintiff was damaged by defendants' actions in the amount of the car's value.

63. Defendants' conduct was willful and intentional including its aforesaid representations to plaintiff that law enforcement was or was to be imminently involved in the car's repossession and the plaintiff would be subject to arrest.

## COUNT IV - VIOLATION OF THE UNIFORM COMMERCIAL CODE
*(Plaintiff v. FCC)*

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint.

65. The Plaintiff fulfilled all of their duties and obligation under the subject contract(s) and/or they were prevented from performing by the defendants' misconduct.

66. The Plaintiff did not default under the subject contract.

67. Where a consumer signs a Buyer's Order and financing contract and FCC cannot sell or assign the financing contract there has been no consumer default.

68. Defendants never perfected their security interest in the subject vehicle.

69. By denying the binding nature of the Buyer's Order and financing contract and denying Plaintiff return of the Vehicle, the defendants effectively "repossessed" the subject vehicle.

70. Because there had been no default at the time of repossession there being no payment due under the financing agreement until December 1, 2011, FCC did not have any then present possessory interest or right in the Vehicle when it conducted the repossession.

71. Defendants violated 13 Pa.C.S.A. §§ 9601 et seq. and 69 P.S. § 623 when they took possession of the vehicle where there had been no default.

72. Defendants never provided any written notice to Plaintiff related to their taking possession of the subject vehicle in violation of 69 P.S. § 623.

73. Defendants never provided any written notice to Plaintiff related to their disposition of the subject vehicle in violation of 13 Pa.C.S.A. §§ 9611-9612 and 9614 and 69 P.S. § 623.

## COUNT V
### VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES
*(Plaintiff v. Defendants)*

74. The allegations above are re-alleged and incorporated herein by reference.

75. The actions and omissions of defendants as hereinbefore and hereinafter described, including but not limited to defendants' enumerated acts herein above, constitute violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. sec. 201-1 *et. seq.* including but not limited to the violation of 73 P.S. § 201-2(4):

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, and approval of financing for the Vehicle;
>
> (v) Representing that goods or services have sponsorship, approval, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have in that defendants deceived

plaintiff into believing he had obtained financing of the Vehicle;

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another in that the defective transmission of the Vehicle was not disclosed by FCC as required by the Pa. Code;

(ix) Advertising goods or services with intent not to sell them as advertised;

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding in that defendants failed to advise plaintiff either orally or in writing that sale of the Vehicle was contingent upon JBT agreeing to finance sale of the Vehicle to Plaintiff.

## Pennsylvania Motor Vehicle Sales Finance Act

76. Defendant FCC is licensed pursuant to 69 P.S. § 604.

77. Pursuant to 69 P.S. § 610 Defendant FCC's license may be revoked if it has violated any provision of the MVSFA.

78. Pursuant to 69 P.S. §§ 610 and 612 Defendant FCC must maintain satisfactory records to determine that the business is being operated in accordance with the MVSFA and may not falsify any records.

79. Defendant FCC violated 69 P.S. §§ 610(11) by defrauding plaintiff and willfully failing to perform a written agreement with plaintiff in connection with any business regulated under the MVSFA.

80. Defendant FCC violated 69 P.S. §§ 613-615, respectively by failing to provide an installment sale contract to Plaintiff for the deal at all, much less compliant with the provisions of the aforesaid statutory provisions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

    A. Violations of ECOA and Reg B, under 15 U.S.C. § 169le(b):

        (1) Actual damages;

        (2) Punitive damages up to $10,000; and

        (3) Reasonable attorney fees and costs.

    B. Actual damages, punitive damages and such other and further relief against Defendant as the Court deems proper for fraud and conversion of the Vehicle.

    C. For the above-described violations of the UCC, actual and statutory damages pursuant to 13 Pa.C.S.A. § 9625 in the amount of the entire finance charge plus 10% of the price.

    D. Actual and treble damages plus reasonable attorney fees and costs under UTPCPL;

    E. Such other and further relief as the Court shall deem just and proper.

## TRIAL BY JURY

81.     Plaintiffs are entitled to and hereby respectfully demand a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

Dated: July 27, 2012                               **WEISBERG LAW, P.C.**
                                                        BY:  Matthew B. Weisberg
                                                        7 South Morton Ave.
                                                        Morton, PA 19070
                                                        (610) 690-0801
                                                        Fax (610) 690-0880
                                                         Attorney for Plaintiffs