IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYVANIA

| | | |
|---|---|---|
| MICHAEL HOGUE, | : | |
| Plaintiff, | : | NO. 12-708 |
| | : | |
| v. | : | CIVIL ACTION LAW |
| | : | |
| FREDERICK CHEVROLET- | : | |
| CADILLAC HYNDAI, INC. and | : | |
| JONESTOWN | : | JUDGE JONES |
| BANK AND TRUST, | : | |
| Defendants. | : | |
| | : | |

**JOINT CASE MANAGEMENT PLAN**

## 1. Principal Issues

### 1.1 Separately for each party, please give a statement summarizing this case:

**By plaintiff:**

Plaintiff in his first amended complaint ("FAC") alleges that he is the victim of a fraudulent used car deal in which defendant dealer, Frederic Chevrolet-Cadillac ("FCC") sold plaintiff a vehicle via a signed Buyer's Order and defendant lender, Jonestown Bank & Trust ("JBT"), provided financing via a financing agreement both of which documents were executed on the same date at the same location. Because the remaining loan balance for plaintiff's anticipated trade-in vehicle, a Lincoln Zephyr, could not be financed with the purchase price of the vehicle from FCC, FCC told plaintiff to voluntarily repossess the Zephyr so that he could qualify for the financing with Jonestown.

After having the vehicle for just over a week, but prior to any payments being due under the financing agreement for the vehicle, Plaintiff had the vehicle towed to FCC for service. While the vehicle was at FCC's service shop, plaintiff was informed by FCC that financing for the vehicle had been denied by Jonestown and that FCC was retaining the vehicle.

1

Plaintiff never received written notice of a denial of credit from either defendant. FCC alleges that it never sent a denial of credit because plaintiff rejected the vehicle while it was at FCC's repair shop and that it was and is willing to provide financing for the vehicle. Jonestown alleges it sent plaintiff a denial of credit letter documentary proof of which it cannot retrieve due to a flood at its offices destroying archived documents including the foregoing alleged denial letter.

Plaintiff opposes defendants' version of the facts and alleges violation of ECOA for failure to offer a written explanation of denial of credit. Furthermore, plaintiff alleges violation state law under fraud, UDAP, U.C.C., and conversion counts for wrongful repossession of the vehicle by refusing to return it when a financing agreement was in place with either or one of the defendants.

## By defendants:

Defendants deny any violations of any statute or common law. On October 20, 2011, Plaintiff purchased a Chrysler 300 (vehicle) from FCC. At the time of a vehicle purchase, financing is through FCC. FCC then attempts to assign the loan to another lender. In this case, FCC attempted assignment to JBT. On October 24, 2011, during the attempt to assign a loan to JBT, FCC was informed that in order to effectuate the assignment, JBT would require a co-signer for Plaintiff. FCC promptly contacted Plaintiff and advised of the need of a co-signer for purposes of the assignment, and Plaintiff attempted to have his mother act as a co-signer. Plaintiff's mother refused to act as a co-signer. This did not negate the sales transaction or the financing through FCC, and Plaintiff was still the owner of the vehicle.

On October 27, 2011, Plaintiff, acting alone, voluntarily repossessed a Lincoln Zephyr to PSECU. At the time of the voluntary repossession, Plaintiff indicated that his employer was no longer in business, that the Zephyr needed major engine work, and that he would deliver the vehicle to Credit Union Place (address of PSECU). On October 30, 2011, the Chrysler 300 incurred mechanical issues, for which Plaintiff contacted FCC. FCC arranged to have the vehicle towed to FCC's Lebanon location for service. Service was completed on the vehicle, and Plaintiff was contacted on or about November 1, 2011 to retrieve the vehicle. Plaintiff never retrieved the vehicle from FCC.

On December 14, 2011, PSECU notified Richard & Associates to move forward with the physical repossession of the Zephyr, as Plaintiff did not deliver it to Credit Union Place as indicated on October 27, 2011. Repossession of the Zephyr occurred on December 18, 2011.

On December 20, 2011, following repossession, PSECU notified Plaintiff that he had fifteen days in which to pay the balance in full, including repossession charges, interest and overdue payments in order to retrieve the Zephyr. Plaintiff never contacted Richard & Associates to obtain the return of the Zephyr. FCC and JBT had no involvement in Plaintiff's purchase of the Zephyr or repossession of the Zephyr.

In March 2012, the Zephyr was sold at auction by PSECU. In March 2012, Plaintiff was informed as to the remaining delinquency balance on the Zephyr, and the demand for payment. On March 22, 2012, Plaintiff was informed by PSECU that the delinquent PSECU balance was being written off by PSECU. At no time did Plaintiff make any payments to FCC or JBT, no loan was set up with JBT. No delinquency notices were sent to Plaintiff from FCC or JBT. As of July 27, 2012, FCC was still in possession of the vehicle that Plaintiff failed to retrieve as of November 1, 2011, following service. Plaintiff never made a down payment on the vehicle, or requested to pay any type of charges, interest or repair costs. No invoices were ever issued to the Plaintiff for those purposes. Likewise, the contract for purchase of the vehicle and financing clearly indicates that no trade was part of the purchase. Plaintiff was contacted multiple times by FCC to retrieve the vehicle following service. FCC also provided Plaintiff a loaner vehicle while the Chrysler 300 was being serviced. Plaintiff did not return the loaner vehicle until after several weeks had passed, and FCC had to contact Plaintiff for the return of the vehicle.

**1.2    The facts the parties dispute are as follows:**

1. Jonestown Bank and Trust Co. is located at 2 West Market Street, Jonestown, PA 17033.
2. Individuals and entities currently unknown were involved in Plaintiff's purchase and finance of the Chrysler 300.
3. On or around October 20, 2011, Plaintiff viewed a newspaper advertisement in which several vehicle dealers, including FCC, would offer advertised cars for sale.

3

4. The Chrysler 300 was advertised by the dealer.
5. FCC promised Plaintiff the Chrysler 300, if Plaintiff agreed to voluntarily repossess the Zephyr.
6. FCC promised Plaintiff that voluntary repossession of the Zephyr would not adversely affect Plaintiff's credit because the new car payment for the Chrysler 300 would cancel out any negative credit effect of discontinuing payments of the Zephyr.
7. On October 20, 2011, FCC directed Plaintiff to a representative of JBT to complete financing agreement with JBT, specifying finance terms for payments of the buyer's order purchase price for the vehicle.
8. Approximately three days after purchase of the vehicle, the Chrysler 300's transmission failed.
9. JBT never provided any written notice to the Plaintiff that it had denied financing of the vehicle.
10. Weeks after service to the vehicle, Plaintiff contacted FCC and was informed that FCC would not return the vehicle because JBT had denied Plaintiff financing based on the voluntary repossession counseled by FCC.
11. FCC advised Plaintiff that it reported the loaner car given to Plaintiff stolen.
12. Plaintiff contacted JBT numerous times to understand why his financing was denied, and was finally informed that JBT had no record of Plaintiff having applied for financing with JBT for the vehicle.
13. Neither Defendant provided Plaintiff with a written explanation of the denial of credit.
14. Defendants engaged in "spot delivery" or "yo-yo delivery."
15. Plaintiff relied on Defendants' experience, sophistication and expertise in selling and/or financing motor vehicles, and allowed the Zephyr vehicle to be repossessed.
16. FCC repossessed the Chrysler 300.
17. FCC's repossession was a denial of credit to Plaintiff.
18. Defendants failed to provide written notice of denial or revocation of credit to Plaintiff.
19. FCC misrepresented the condition of the vehicle in its sales presentation to Plaintiff.
20. FCC failed to disclose that the transmission was damaged, defective or deteriorated and required replacement.
21. Plaintiff suffered loss of employment.
22. Plaintiff incurred increased purchase cost.
23. Plaintiff's credit rating was damaged, as was his reputation.
24. Plaintiff was deprived of the use and enjoyment of the Chrysler 300.

4

25. Plaintiff incurred cost of replacement vehicles.
26. Plaintiff spent time resolving problems created by Defendants' breach.
27. Plaintiff incurred damages related to emotional distress.
28. Plaintiff incurred increased interest and other expenses for financing the purchase of the vehicle.
29. Plaintiff fulfilled all of his duties and obligations under the contract.
30. Plaintiff was prevented from performing under the contract as a result of Defendants' misconduct.
31. JBT repossessed the vehicle.

### The facts the parties agree upon are as follows:

1. Jonestown Bank and Trust is a financial institution, located at 421 East Penn Avenue, Cleona, Pennsylvania 17042.

2. Frederick Chevrolet-Cadillac Hyndai, Inc. (FCC) is an automobile dealership, located at 1505 Quentin Road, Lebanon, PA 17042.

3. Donald Schlegel, is the Manager, Dealer Department for Jonestown Bank and Trust, situated at 421 East Penn Avenue, Cleona, Pennsylvania, and he has held this position since October 1999.

4. On October 11, 2010, Michael Hogue (Hogue) purchased a 2006 Zephyr (Zephyr) with financing through Pennsylvania State Employees Credit Union (PSECU).

5. Prior to October 20, 2011, Hogue was employed with Jack Treier Moving Company.

6. James Allison is the Sales Manager at FCC (Allison) and has been in this position for over 20 years.

7. Jeremy Crane is the Used Car Director at FCC (FCC) and has been in that position for approximately five years.

8. FCC attended the tent sale event on October 20, 2011 at FCC's Lancaster, Pennsylvania location (sales event).

9. FCC worked with Hogue on the purchase of a used vehicle.

10. Hogue wanted to purchase the 2007 Chrysler 300 (vehicle).

11. During FCC's discussion with Hogue, Hogue advised him that his current vehicle was a Zephyr.

12. FCC prepared the Purchase Order/Agreement (Order) and the Simple Interest to Party Agreement (Agreement) related to the purchase of the vehicle by Hogue.

13. Hogue agreed to purchase the vehicle for $20,500.00 from FCC, and the amount financed was $24,486.65 at an annual percentage rate of 5.49%. The Order and Agreement were executed by Hogue on October 20, 2011.

14. Hogue authorized FCC to retrieve his credit report.

15. FCC did not require or request Hogue to make a cash down payment, and Hogue did not make any cash payment to FCC.

16. Hogue did not trade a vehicle as part of the purchase.

17. Once a buyer signs the Order and Agreement to purchase a vehicle from FCC, FCC is the lender until such time when FCC decides to assign the loan to a bank.

18. On October 20, 2011, after executing the Order and Agreement, Hogue took possession of the vehicle, leaving FCC's sales event with the vehicle.

**19.** Generally, if FCC decides not to assign the loan to a lender, the contract remains with FCC, and the buyer's obligation to make payments is with FCC.

20. Once a buyer enters into a contract with FCC, loan payments are to be made to FCC, unless the buyer is otherwise notified that the loan was assigned to a lender.

21. Hogue never received billing statements or requests for payment from JBT related to an automobile loan because no loan exists.

22. Hogue never made a payment to JBT for an automobile loan.

23. Hogue's loan payments to PSECU for the Zephyr were due on the 10th of each month.

24. The September 10, 2011 payment was made by Hogue on September 30th, 2011.

25. At the time of surrender and at no time in the future did Hogue make the October 10, 2011 loan payment on the Zephyr to PSECU.

26. On October 31, 2011, Hogue contacted FCC because the vehicle suffered mechanical problems. It was promptly towed to FCC's Lebanon, Pennsylvania location for service.

27. FCC provided Hogue a loaner vehicle while his vehicle was being serviced.

28. Within days, Hogue returned the loaner vehicle to the Lebanon location of FCC, but he did not retrieve the vehicle.

29. Upon execution of the Agreement and Order, Hogue owed FCC monthly payments of $449.27, beginning December 4, 2011, and continuing for 63 months.

30. FCC did not make any negative reporting to any credit reporting agency related to Hogue by FCC.

31. Since the filing of this lawsuit, Hogue was advised that the vehicle is located at FCC's Lebanon, Pennsylvania location if he is interested in performing pursuant to the Order and Agreement.

32. As of December 7, 2011, Hogue was delinquent on the Zephyr to PSECU in the amount of $890.04.

33. On December 14, 2011, Hogue advised Richard and Associates, Inc. as to the location of the Zephyr for repossession. (Keys in center console at girlfriend's mother's address).

34. On December 18, 2011, Richard and Associates, Inc. repossessed the Zephyr.

35. On December 20, 2011, PSECU informed Hogue via correspondence that he could redeem the repossessed Zephyr within fifteen days and make payment to redeem vehicle.

36. Hogue never redeemed the Zephyr from PSECU, and the vehicle was sold on March 1, 2012.

37. On March 22, 2012, PSECU charged off Hogue's deficient balance on the Zephyr.

38. As of October 27, 2011, Plaintiff owned/purchased at least three vehicles as reflected in his credit report. The Zephyr financed with PSECU and another vehicle financed with Fulton Bank.

### 1.3    The legal issues the parties __dispute__ are as follows:

a. Whether Defendant violated the Equal Credit Opportunity Act?
b. Whether Defendants committed fraud?
c. Whether Defendants' actions constituted conversion?
d. Whether Defendants violated the Uniform Commercial Code?
e. Whether Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law?
f. Whether FCC violated the Pennsylvania Motor Vehicle Sales Finance Act?
g. Whether Plaintiff suffered damages as a result of Defendants' actions?

### agree upon are as follows:

a. Plaintiff is an applicant under the ECOA.
b. JBT is a creditor under the ECOA
c. FCC is a creditor under the ECOA.
d. Declination of credit is an adverse action under the ECOA.
e. Repossession is an adverse action under the ECOA.

### 1.4    Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:  None.

7

**1.5    Identify any named parties that have not yet been served:** None.

**1.6    Identify any additional parties that:**

**plaintiff(s) intends to join:** Potentially individuals employed by FCC or JBT identified by plaintiff in discovery whose actions in the involved dispute defendant may disclaim authority was granted by the corporate defendants.

**defendant(s) intends to join:** None.

**1.7    Identify any additional claims that:**

**plaintiff(s) intends to add:** None at this time.

**defendant(s) intends to add:** None at this time as to JBT. FCC may bring a breach of contract claim against Plaintiff.

## 2.0    Disclosures

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

**2.1    Separately for each party, list by <u>name and title/position</u> each person whose identity has been disclosed.**

**Disclosed by Plaintiff:**

| <u>Name</u> | <u>Title/Position</u> |
| --- | --- |
| Cassandra Collazo | Friend of plaintiff |
| Celinet Pagan | Mother of plaintiff |

**Disclosed by Defendant:**

| Name | Title/Position |
|------|----------------|
| Frederick Laurenzo | Owner, FCC |
| Jeremy FCC | Used Car Director, FCC |
| James Allison | Sales Manager, FCC |
| Donald Schlegel | Manager, Dealer Department, Jonestown Bank & Trust Co. |

A representative of PSECU
A representative of Richland & Associates
A representative of Ladd Hanford

## 3.0   Early Motions

**Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:**

| Nature of Motion | Moving Party | Anticipated Filing Date |
|------------------|--------------|-------------------------|
| Motion(s) for Summary Judgment (Motion(s) to Dismiss – 12(b)(6)) | Defendants | Filed on August 16, 2012* |

*Motion(s) were filed August 16, 2012.  Briefs in Support were filed on August 30, 2012. Joint Statements of Material Facts was filed August 30, 2012.

## 4.0   Discovery

**4.1   Briefly describe any discovery that has been completed or is in progress:**

> **By plaintiff(s):**
> Plaintiff's Rule 26a disclosures.
> Plaintiff intends to serve discovery regarding the following issues:

JBT's standard protocol for generating denial of credit letters to loan applicants; JBT's practices and procedures as applied to review of plaintiff's application for credit as to the Chrysler vehicle;

JBT and FCC's communications with each other regarding plaintiff's application for credit and reasons for its denial;

JBT and FCC's communications with plaintiff regarding his application for credit and reasons for its denial;

JBT's alleged flood damages that destroyed stored JBT documents including alleged credit related document pertaining to the disputed transaction;

FCC's phone contacts and phone records reflecting contact with plaintiff and/or his mother which plaintiff disputes.

Plaintiff will depose all fact witnesses identified by defendants.

**By defendant(s):**

Defendants served Rule 26 Disclosures. Defendants provided Plaintiff with a complete copy of documents received in response to subpoenas from PSECU and Fulton Bank. Defendants served its First Set of Interrogatories and Request for Production of Documents upon Plaintiff on July 17, 2012. As of this date, Plaintiff has not provided responses. In the event that Defendants' Motion(s) for Summary Judgment are not granted it its entirety, Defendants will move forward with the deposition of Plaintiff, along with all relevant fact witnesses. Defendants will also move forward with subpoenaing additional documentation from Plaintiff's former employer(s), credit report agencies, and any other non-party relevant to this matter.

**4.2    Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):**

Depositions of all fact witnesses regarding facts and circumstances surrounding allegations asserted.

4.3     Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects</u>, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

None at this time.

4.4     Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:

None at this time.

4.5     For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):

4.5.1 depositions (excluding experts) to be taken by:

plaintiff(s):            defendant(s): 10 or less


4.5.2 interrogatories to be served by:

plaintiff(s):            defendant(s): 25 or less

4.5.3 document production requests to be served by:

plaintiff(s):            defendant(s): 25 or less

4.5.4 requests for admission to be served by:

plaintiff(s):            defendant(s): 25 or less

11

**4.6    Discovery of Electronically Stored Information**

Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.

Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:

None.

**5.0    Protective Order**

**5.1    If entry of a protective order is sought, attach to this statement a copy of the proposed order. Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.**

The parties will rely on an agreed-upon Confidentiality Agreement, as necessary.

**5.2    If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:**

**6.0    Scheduling**

**6.1    Final date for joining additional parties:**

Plaintiff(s):                    November 15, 2012

Defendants(s):                November 30, 2012

**6.2    Final date for amending pleadings:**

Plaintiff(s):                    November 15, 2012

12

**Defendants(s):**            November 30, 2012

**6.3   All fact discovery commenced in time to be completed by:**

January 31, 2013

**6.4   All potentially dispositive motions should be filed by:**

March 1, 2013

*Dispositive Motions currently pending.

**6.5   Reports from retained experts due:**

**from plaintiff(s) by:**        March 1, 2013

**from defendant(s) by:**        April 2, 1013

**6.6   Supplementations due:**        April 15, 2013

**6.7   All expert discovery commenced in time to be completed by:**

April 23, 2013

**6.8   This case may be appropriate for trial in approximately:**

__ **240 Days from the filing of the action in this court**

_X_ **365 Days from the filing of the action in this court**

__ **Days from the filing of the action in this court**

**6.9   Suggested Date for the final Pretrial Conference:**

June 3, 2013

**6.10  Trial**

**6.10.1 Suggested Date for Trial:**

July, 2013

**7.0    Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individual(s) have settlement authority.

**For Plaintiff:**

**WEISBERG LAW, P.C.**
Matthew B. Weisberg
7 South Morton Ave.
Morton, PA 19070
(610) 690-0801
mweisberg@weisberglawoffices.com

**For Defendants:**

Peggy M. Morcom, Esquire
Reilly, Wolfson, Sheffey, Schrum & Lundberg, LLP
1601 Cornwall Road
Lebanon, PA 17042
(717) 273-3733
pmorcom@rwssl.com

**8.0 Alternative Dispute Resolution ("ADR")**

**8.1    Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.**

**ADR procedure** – Defendants do not concur with referral of this matter to Mediation.

14

Date ADR to be commenced:
Date ADR to be completed:

8.2    If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

8.3    If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

9.0    Consent to Jurisdiction by a Magistrate Judge

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court:
\_ Yes  X No.

If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:   N/A

\_\_\_ Scranton/Wilkes-Barre
\_\_\_ Harrisburg

10.0   Other Matters

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

11.0 Identification of Counsel

Counsel shall be registered users of the courts Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case

15

Filing Policies and Procedures.  Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy.  Any request for waiver of electronic filing must be filed with the Clerks Office prior to the case management conference.  The Chief Judge may grant or deny such request.

Identify by name, address, and telephone number lead counsel for each party.  Also please indicate ECF User status below.


Dated:  9/24/12          Matthew Weisberg, Esquire                          
                         **Attorney for Plaintiff**
             X           ECF User
             G           Waiver requested (as separate document)
             G           Fed.R.Civ.P.7.1 (statement filed if necessary)*


Dated:  9/18/2012        Peggy M. Morcom, Esquire                          
                         **Attorney for Defendants**
             X           ECF User
             G           Waiver requested (as separate document)
             G           Fed.R.Civ.P.7.1 (statement filed if necessary)*


* Fed.R.Civ.P.7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.