## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYVANIA

MICHAEL HOGUE,                     :
       Plaintiff,              : NO. 12-708
                              :
            v.                  : CIVIL ACTION LAW
                              :
FREDERICK CHEVROLET-               :
CADILLAC HYUNDAI, INC. and         :
JONESTOWN BANK AND TRUST           :
CO., JOHN DOES 1-10,               : JUDGE JONES
       Defendants.             :

## ANSWER TO AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST PLAINTIFF

AND NOW, come Defendants, Frederick Chevrolet-Cadillac Hyundai, Inc. (FCC) and Jonestown Bank and Trust (JBT), by and through counsel, and hereby file this Answer to Amended Complaint with Affirmative Defenses and Counterclaim against Plaintiff, and state as follows:

## I. JURISDICTION AND VENUE

1.  Admitted upon information and belief.

2.  Admitted.

## II.  PARTIES

3.  Denied. After reasonable investigation, Defendants are without sufficient information or knowledge to form a belief as to the truth of this allegation.

4.  Admitted in part, denied in part. It is admitted that FCC does business as Frederick Certified Pre-Owned of Hershey, PA, and is a corporation licensed to do

business in the Commonwealth of Pennsylvania, and regularly conducts business in the Commonwealth of Pennsylvania. It is denied that its principle place of business is 1280 East Chocolate Avenue, Hershey. The principle place of business for FCC is 1505 Quentin Road, Lebanon, PA 17042. The remainder of the allegation is denied, strict proof thereof is demanded.

5. Denied as stated. JBT is a financial institution, located at 421 East Penn Avenue, Cleona, PA 17042.

6. Admitted in part, denied in part. It is admitted that Jeremy Crane (Crane) was employed with FCC at all times relevant to the Complaint. The remainder of the allegation is denied, strict proof thereof is demanded.

7. Denied. Defendant is without sufficient information or knowledge to form a belief as to the truth of this allegation. Strict proof thereof is demanded.

## III. FACTUAL ALLEGATIONS

8. Admitted in part, denied in part. It is admitted that the employees of FCC and JBT acted within the scope of their authority at all times relevant to this action. It is denied that any representative of JBT had contact with Plaintiff on October 20, 2011. As to any unnamed Defendants, Defendants are without sufficient information or knowledge to form a belief as to the truth of this allegation. Therefore, the remainder of the allegation is denied, and strict proof thereof is demanded.

9. Denied. Defendants are without sufficient information or knowledge to form a belief as to the truth of this allegation, and strict proof thereof is demanded.

10. Admitted in part, denied in part. It is admitted that on October 20, 2011, Plaintiff presented to FCC and purchased a 2007 Chrysler 300 (vehicle). Plaintiff was not in possession of his 2006 Lincoln Zephyr (Zephyr) when he presented to FCC. The remainder of the allegation is denied, and strict proof thereof is demanded.

11. Admitted in part, denied in part. It is admitted that Plaintiff examined the vehicle, and worked with Crane on the purchase of the vehicle. The remainder of the allegation is denied, and strict proof thereof is demanded.

12. Denied. Plaintiff never indicated to Crane that he wanted to trade the Zephyr as part of the transaction to purchase the vehicle.

13. Denied. No employee of FCC or JBT advised to Plaintiff the vehicle would be his if he agreed to voluntarily repossess the Zephyr. Alternatively, Plaintiff purchased the vehicle from FCC without the necessity of trading the Zephyr. JBT and FCC were never in possession of Plaintiff's Zephyr.

14. Denied. No employee of FCC or JBT advised Plaintiff to voluntarily repossess his Zephyr, and Plaintiff was never advised that a voluntary repossession would not impact his credit rating. Strict proof thereof is demanded.

3

15. Admitted in part, denied in part. It is admitted that Plaintiff purchased and signed the Purchase Order/Agreement with FCC to purchase the vehicle for $20,500.00, with the amount financed of $24,486.65. The remainder of the allegation is denied, and strict proof is demanded.

16. Admitted in part, denied in part. It is admitted that on October 20, 2011, Plaintiff was assisted by James Allison, Sales Manager for FCC (Allison), to complete the financing arrangements. No employee of JBT worked with Plaintiff to purchase the vehicle or directly finance the vehicle on October 20, 2011. The remainder of the allegation is denied, and strict proof thereof is demanded.

17. Denied as stated. The document speaks for itself.

18. Denied as stated. Plaintiff executed the Simple Interest Two Party Agreement setting forth the finance terms.

19. Admitted in part, denied in part. It is admitted that FCC was the lender for purposes of Plaintiff purchasing and financing the vehicle. FCC attempted to assign the loan to JBT. The remainder of the allegation is denied, and strict proof is demanded.

20. Admitted. On October 20, 2011, Plaintiff took possession of the vehicle and departed FCC with the vehicle.

21. Admitted in part, denied in part. It is admitted that the vehicle suffered mechanical issues on October 27, 2011. The issues were reported by Plaintiff on

the same date, and it was towed to FCC for repair. The remainder of the allegation is denied.

22. Admitted. Following completion of service, Plaintiff refused to retrieve the vehicle from FCC.

23. Admitted in part, denied in part. It is admitted that on October 24, 2011, JBT informed FCC via facsimile that it could not accept assignment of the loan held by FCC, unless Plaintiff obtained a co-signer. The remainder of the allegation is denied, and strict proof thereof is demanded.

24. Denied. Strict proof thereof is demanded.

25. Denied. At no time was Plaintiff advised that the vehicle would not be returned to him for any reason, including voluntary repossession. The vehicle was available for Plaintiff's retrieval.

26. Denied. Plaintiff failed to return the loaner vehicle to FCC and failed to retrieve the purchased vehicle from FCC. Approximately two weeks after Plaintiff was provided the loaner vehicle, Crane contacted Plaintiff and informed him that he needed to return the loaner vehicle. Crane advised Plaintiff that if he failed to return the loaner vehicle, he would be forced to contact appropriate authorities to retrieve the loaner vehicle.

27. Denied. Strict proof thereof is demanded.

28. Denied. JBT provided written notification to Plaintiff that the assignment by FCC was being declined by JBT, unless Plaintiff obtained a co-signer. FCC never declined Plaintiff's credit. The declination by JBT did not terminate the purchase agreement between Plaintiff and FCC.

29. Denied. Strict proof thereof is demanded.

30. Denied. Strict proof thereof is demanded.

31. Denied. Strict proof thereof is demanded.

32. Denied. Strict proof thereof is demanded.

33. Denied. Strict proof thereof is demanded.

34. Denied as stated. The allegation is non-sensical and cannot be reasonably deciphered to provide a response to the allegation.

35. Admitted in part, denied in part. It is admitted that the employees of FCC and JBT acted within the scope of their authority at all times relevant to this action. It is denied that any representative of JBT had contact with Plaintiff on October 20, 2011. As to any unnamed Defendants, FCC and JBT are without sufficient information or knowledge to form a belief as to the truth of this allegation. Therefore, the remainder of the allegation is denied, and strict proof thereof is demanded.

36. Admitted in part, denied in part. It is admitted that the employees of FCC and JBT acted within the scope of their authority at all times relevant to this action.

It is denied that any representative of JBT had contact with Plaintiff on October 20, 2011. As to any unnamed Defendants, FCC and JBT are without sufficient information or knowledge to form a belief as to the truth of this allegation. Therefore, the remainder of the allegation is denied, and strict proof thereof is demanded.

37. Admitted in part, denied in part. It is admitted that FCC and JBT developed policies and procedures to operate their businesses. The remainder of the allegation is denied. Strict proof thereof is demanded.

## COUNT I – VIOLATION OF ECOA

38. Defendants incorporate their answers to Paragraphs 1-37, as though fully set forth herein.

39. Admitted.

40. Admitted.

41. Denied. This allegation is non-sensical and cannot be reasonably deciphered to provide a response to the allegation.

42. Admitted in part, denied in part. It is admitted that Plaintiff completed a credit application with FCC to purchase the vehicle. The remainder of the allegation is denied, and strict proof thereof is demanded.

43. Denied. This is a legal conclusion, for which no response is necessary. Further, FCC never declined Plaintiff's credit to purchase the vehicle.

44. Denied. This is a legal conclusion to which no response is necessary.

45. Denied. This is a legal conclusion to which no response is necessary. FCC never denied Plaintiff's credit to purchase the vehicle.

46. Denied. This is a legal conclusion to which no response is necessary. FCC never denied Plaintiff's credit to purchase the vehicle.

47. Denied. FCC did not repossess the vehicle. Plaintiff failed to retrieve the vehicle from FCC's Quentin Road location following completion of repairs, and Plaintiff verbally terminated/rescinded the sales transaction for the vehicle.

48. Denied. FCC did not repossess the vehicle. Plaintiff's credit for the purchase of the vehicle was never declined by FCC. Plaintiff verbally terminated the sales transaction for the vehicle, and Plaintiff failed to retrieve the vehicle from FCC upon completion of repairs.

49. Denied. This is a legal conclusion to which no response is necessary.

50. Denied. FCC did not deny Plaintiff's credit. JBT informed Plaintiff of his credit denial for assignment of the loan with FCC to JBT. There was never a revocation of credit by FCC or JBT. Strict proof thereof is demanded.

51. Denied. This is a legal conclusion to which no response is necessary. FCC and JBT maintained all required records, and to the extent JBT is unable to locate records related to the issuance of its declination letter to the Plaintiff, the document was unable to be located as a result of significant flooding in the Central

8

Pennsylvania area in the Fall of 2011, causing disarray to the filing system located in the basement.

52. Denied. This is a legal conclusion to which no response is necessary. FCC and JBT maintained all required records, and to the extent JBT is unable to locate records related to the issuance of its declination letter to the Plaintiff, the document was unable to be located following significant flooding in the Central Pennsylvania area in the Fall of 2011, causing disarray to the filing system located in the basement.

## COUNT II – FRAUD

53. Defendants incorporate their responses to Paragraphs 1-52, as though fully set forth herein.

54. Denied. Strict proof thereof is demanded. By way of further response, FCC never denied Plaintiff's credit. The purchase and financing of the vehicle was complete on October 20, 2011, at the time of sale. Plaintiff's voluntary repossession of the Zephyr following the purchase of the vehicle did not impact JBT's decision to decline the assignment of the loan from FCC without a co-signer for Plaintiff. FCC was in the process of transferring title and registration of the vehicle to Plaintiff, when Plaintiff verbally terminated the transaction and rescinded the Agreement. FCC did not misrepresent the condition of the vehicle. JBT never represented to Plaintiff that credit for assignment of the vehicle had

been approved. However, JBT advised Plaintiff via correspondence of the denial

of credit for assignment of the FCC loan and the requirement for a co-signer to

accept the assignment. This demand by JBT did not alter the sale and finance of

the vehicle with FCC. The remainder of the allegation is denied. Strict proof

thereof is demanded.

55. Denied. Strict proof thereof is demanded.

56. Denied. Strict proof thereof is demanded.

57. Denied. Strict proof thereof is demanded.

58. Denied. Strict proof thereof is demanded.

59. Denied. Strict proof thereof is demanded.

## COUNT III – CONVERSION
## (AS TO FCC ONLY)

60. Defendant, FCC incorporates by reference its responses to Paragraphs 1-59

as though fully set forth herein.

61. Denied. FCC did not repossess the vehicle, Plaintiff refused to retrieve the

vehicle following repair. Strict proof thereof is demanded.

62. Denied. Strict proof thereof is demanded.

63. Denied. Strict proof thereof is demanded.

## COUNT IV – VIOLATION OF THE
## UNIFORM COMMERCIAL CODE
## (AS TO FCC ONLY)

64. Defendant, FCC incorporates by reference its responses to Paragraphs 1-63 as though fully set forth herein.

65. Denied. Plaintiff failed to make one payment to FCC, as required by the Purchase Order and Simple Interest Two Party Agreement. Plaintiff failed to retrieve the vehicle he purchased from FCC following the completion of repairs. Strict proof thereof is demanded.

66. Denied. Plaintiff rescinded the Purchase Order and Simple Interest Two Party Agreement with FCC for the purchase of a vehicle.

67. Denied as stated. Plaintiff was approved and obtained financing through FCC, and Plaintiff purchased the vehicle through FCC. FCC has the ability to assign the contract at any time to another lender. The request for assignment to another lender, regardless of whether the new lender will accept assignment or not does not impact Plaintiff's purchase of the vehicle from FCC.

68. Denied. FCC maintained a security interest in the vehicle. JBT never had a security interest in the vehicle, because it never accepted assignment by FCC, and it was never an owner of the vehicle.

69. Denied. FCC did not repossess the vehicle. Plaintiff refused to retrieve the vehicle following completion of the repairs. No repossession of the vehicle occurred.

70. Denied. FCC did not repossess the vehicle. Plaintiff failed to retrieve the vehicle following repair. Plaintiff verbally terminated the sales transaction and rescinded the Agreement for the purchase and finance of the vehicle. Plaintiff's first payment to FCC was due on December 4, 2011. Plaintiff did not make any payments to FCC.

71. Denied. This is a legal conclusion to which no response is necessary.

72. Denied. This is a legal conclusion to which no response is necessary. FCC never repossessed the vehicle. Plaintiff was informed by FCC that the vehicle was ready for retrieval following completion of the repairs in October 2011. Plaintiff failed to retrieve the vehicle, and Plaintiff verbally terminated the purchase of the vehicle. No written notice was required to be given by FCC to the Plaintiff.

73. Denied. This is a legal conclusion to which no response is necessary.

## COUNT V – VIOLATION OF THE
## PENNSYLVANIA UNFAIR TRADE PRACTICES ACT

74. Defendants incorporate their relevant and applicable responses to Paragraphs 1-73, as though fully set forth herein.

75. Denied. Portions of this allegation are non-sensical and cannot be reasonably deciphered. Further, these allegations appear to be legal conclusions to which no response is necessary.

76. Admitted.

77. Denied. This is a legal conclusion to which no response is necessary.

78. Denied. This is a legal conclusion to which no response is necessary.

79. Denied. This is a legal conclusion to which no response is necessary.

80. Denied. This is a legal conclusion to which no response is necessary.

WHEREFORE, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety, and that judgment be entered in favor of Defendants, and against Plaintiff, plus the costs of this action.

## AFFIRMATIVE DEFENSES

81. Plaintiff's claims are barred by his unclean hands.

82. The Pennsylvania Motor Vehicle Sales Finance Act does not permit a private cause of action.

83. Plaintiff fails to state a claim upon which relief may be granted.

84. Plaintiff did not suffer any actual damages.

85. Plaintiff failed to mitigate any alleged damages.

86. Plaintiff falsified his credit application by indicating he was employed, when Plaintiff was terminated on October 18, 2011, a violation of 18 U.S.C. § 1014.

87. Providing false information on a credit application voids the agreement to purchase and financing agreement.

88. FCC did not deny or decline Plaintiff's credit.

89. Plaintiff refused to retrieve the vehicle from FCC after repair on November 1, 2011.

90. FCC and JBT maintained all records as required.

91. FCC did not revoke Plaintiff's credit.

92. The financing terms for the purchase of the vehicle were never altered.

93. Plaintiff terminated the sales transaction.

94. Plaintiff did not pay money or trade another vehicle to purchase the vehicle from FCC.

95. Plaintiff did not make any loan payments to FCC.

96. The vehicle was in good condition when purchased by Plaintiff.

97. FCC provided Plaintiff a loaner vehicle at no cost to Plaintiff while the vehicle was being repaired.

98. FCC repaired the vehicle without cost to Plaintiff.

99. Plaintiff voluntarily repossessed his Zephyr because he was defaulting on his loan with PSECU.

100.    Plaintiff voluntarily repossessed the Zephyr because it had major engine problems.

101.    Plaintiff's claims are frivolous and vexatious.

WHEREFORE, Plaintiff's claims should be dismissed in their entirety.

## COUNTERCLAIM AGAINST PLAINTIFF BY DEFENDANTS
## COUNT I – FRAUD

102.    Defendants, FCC and JBT incorporate Paragraphs 1-101, as though fully set forth herein.

103.    On October 18, 2011, Plaintiff's employment was involuntarily terminated from Jack Treier Moving, Inc.

104.    On October 20, 2011, Plaintiff presented at FCC and completed and signed a credit application to purchase a vehicle from FCC, and stated that he was employed with Jack Treier Moving, Inc. A copy of the Credit Application is attached as Exhibit "C."

105.    On October 20, 2011, Plaintiff was aware he was not employed at the time he applied for credit with FCC.

106.    When Plaintiff executed the credit application and the contracts with FCC, he knew he did not intend to fulfill his obligations under the contracts.

15

107.    On October 20, 2011, Plaintiff departed FCC's location with the vehicle he purchased, knowing he was unemployed and unable to make payments on the vehicle.

108.    Plaintiff never made or intended to make any payments to FCC or other lender for the purchase of the vehicle.

109.    The false information provided by Plaintiff on his credit application was used by FCC and JBT in determining Plaintiff's credit worthiness.

110.    As a result of FCC's review and reliance upon Plaintiff's credit application and credit report, FCC entered into an agreement with Plaintiff for the purchase of the vehicle.

111.    As a result of FCC's review of and reliance upon Plaintiff's credit application and credit report, FCC offered and approved credit for the purchase of the vehicle by Plaintiff.

112.    On October 20, 2011, Plaintiff purchased the vehicle from FCC for $20,500.00, plus various fees and taxes for a total price of $24,486.65. See Exhibit "A."

113.    The amount financed by Plaintiff, through FCC, was $24,486.65 at an annual percentage Rate of 5.49%. See Exhibit "B."

114.    As a result of FCC's review of and reliance upon Plaintiff's credit application and credit report, FCC did not require or request Plaintiff to make a

cash down payment for the purchase of the vehicle, and Plaintiff did not make any cash payment to FCC.

115. Plaintiff did not trade a vehicle as part of the vehicle purchase.

116. Plaintiff previously purchased vehicles and was aware of the process to purchase a vehicle.

117. Plaintiff understood the application process, the terms and conditions of the purchase, and the finance of the vehicle on October 20, 2011.

118. When Plaintiff made the aforementioned misrepresentation on his credit application, he knew the employment information was false, and he provided the information with knowledge of the falsity and with reckless disregard for the truth of the matter.

119. The aforementioned misrepresentations were material to the transaction.

120. Plaintiff made the misrepresentations with the intent of misleading FCC and JBT into relying on them, and FCC and JBT justifiably relied on said misrepresentations.

121. The above action by Plaintiff constitutes fraud.

122. On October 20, 2011, Plaintiff was the owner of a Zephyr, financed by PSECU.

123.    Plaintiff's September 10, 2011 payment to PSECU for the Zephyr was late when paid by Plaintiff on September 30, 2011.

124.    On October 20, 2011, Plaintiff failed to make his October 10, 2011 payment to PSECU on the Zephyr.

125.    On October 20, 2011, Plaintiff knew he was defaulting on his auto loan for the Zephyr with PSECU.

126.    Plaintiff's last payment to PSECU on the Zephyr was September 30, 2011, and he made no further payments to PSECU.

127.    On October 27, 2011, Plaintiff contacted PSECU and voluntarily reposed the Zephyr, indicating his employer went out of business and the car needed major engine work.

128.    On October 27, 2011, Plaintiff was aware his employer, Jack Treier, did not go out of business, and Plaintiff was aware his employment was voluntarily terminated on October 18, 2011.

129.    On December 20, 2011, a 15 Day Notice was sent to Plaintiff by PSECU advising him of his right to redeem the Zephyr within 15 days. Plaintiff never redeemed the Zephyr.

130.    In early March 2012, the Zephyr was sold at auction by PSECU.

131.    On March 17, 2012, a 10 Day Deficient Balance letter was sent to Plaintiff from PSECU.

132.     On March 22, 2012, PSECU charged off the deficient balance.

133.     Plaintiff used FCC's loaner vehicle for several weeks at no cost to Plaintiff.

134.     Repairs on the vehicle were complete on or about November 1, 2011, Plaintiff was contacted by FCC and informed that the vehicle was ready for retrieval, and that he should return the loaner vehicle.

135.     Plaintiff knew when he departed FCC with a loaner vehicle that he did not intend to retrieve the vehicle, and he continued to keep and use the loaner vehicle.

136.     Plaintiff refused to retrieve the vehicle, nor was he willing to return the loaner vehicle to FCC.

137.     Approximately two weeks after the vehicle remained in the service area, Crane contacted Plaintiff and advised him that he needed to return the loaner vehicle, at which time Plaintiff advised Crane that he did not intend to retrieve the vehicle, and that he no longer wanted the vehicle.

138.     After institution of this suit, Plaintiff was again contacted through counsel on July 3, 2012, and notified the vehicle was available at FCC for his retrieval. Plaintiff declined the vehicle.

139.     The failure of Plaintiff to advise FCC of the aforementioned default on the PSECU loan was a material misrepresentation when he applied for credit with FCC.

140.     As a result of Plaintiff's intentional acts or omissions, FCC suffered damages in that it was unable to sell the vehicle which Plaintiff purchased until July 2012, was never paid money by Plaintiff for the value of the vehicle, incurred repair costs associated with mechanical damage to the vehicle, and FCC was deprived of the loaner vehicle which was provided to Plaintiff and the costs associated with the use by Plaintiff.

141.     As a result of Plaintiff's intentional acts or omissions, FCC suffered losses associated with continued attempts to have Plaintiff retrieve the vehicle, inability to sell the vehicle within a reasonable period of time due to issue of ownership.

142.     As a result of Plaintiff's intentional acts or omissions, FCC suffered depreciation in the value of the vehicle.

143.     As a result of Plaintiff's intentional acts or omissions, JBT expended time and expense to retrieve Plaintiff's credit report and analyze it.

144.     As a result of Plaintiff's intentional acts or omissions, FCC and JBT were required to retain counsel in order to defend the instant action which arises

out of Plaintiff's intentional acts and omissions as set forth above, and incurred fees and costs.

145.    Plaintiff's acts and omissions set forth above were willful and wanton.

WHEREFORE, FCC and JBT request judgment be entered against Plaintiff and Plaintiff be ordered to pay compensatory damages, punitive damages, attorney's fees and costs.

## COUNT II – VIOLATION OF 18 U.S.C. § 1014 –
## FALSE STATEMENTS ON LOAN OR CREDIT APPLICATION

146.    Defendant, JBT, incorporates Paragraphs 1 – 145, as though fully set forth herein.

147.    Plaintiff provided intentional false statements on his credit application to finance and purchase the vehicle.

148.    Plaintiff knowingly misrepresented his employment status on October 20, 2011 on his credit application.

149.    Plaintiff's misrepresentation regarding his employment status was considered in the bank's credit determination.

150.    As a result of Plaintiff's intentional acts or omissions, FCC and JBT were required to retain counsel in order to defend the instant action which arises out of Plaintiff's intentional acts and omissions as set forth above, and incurred fees and costs.

151.    As a result of Plaintiff's intentional misrepresentations, JBT expended time and expense to retrieve Plaintiff's credit report and analyze it.

WHEREFORE, JBT requests judgment be entered against Plaintiff and be ordered to pay compensatory damages, including attorney's fees and costs.

Respectfully submitted,

Reilly, Wolfson, Sheffey,
Schrum & Lundberg, LLP

/s/   Peggy M. Morcom, Esq.
Peggy M. Morcom, Esquire
Atty ID: 92463
1601 Cornwall Road
Lebanon, PA 17042
(717) 273-3733
pmorcom@rwssl.com

Date: January 28, 2013

## CERTIFICATE OF SERVICE

I, Peggy M. Morcom, Esquire, do hereby certify I served a copy of the foregoing document via Electronic Filing on this date, as follows:

Matthew B. Weisberg, Esquire
Weisberg Law, P.C.
7 South Morton Avenue
Morton, PA 19070


/s/    Peggy M. Morcom, Esq.
Peggy M. Morcom, Esquire


Date: January 28, 2013

### **VERIFICATION**

The undersigned hereby verifies that the statements relative to JBT in the foregoing document are based upon information which has been furnished to counsel by me and information which has been gathered by counsel in the defense of this lawsuit. The language of the foregoing document is that of counsel and not my own. I have read the foregoing document and to the extent that it is based upon information which I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing document are that of counsel, I have relied upon my counsel in making this verification. The undersigned also understands that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_____
Donald Schlegel

Date: __1/24/13__

## VERIFICATION

The undersigned hereby verifies that the statements relative to FCC in the foregoing document are based upon information which has been furnished to counsel by me and information which has been gathered by counsel in the defense of this lawsuit. The language of the foregoing document is that of counsel and not my own. I have read the foregoing document and to the extent that it is based upon information which I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing document are that of counsel, I have relied upon my counsel in making this verification. The undersigned also understands that the statements therein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

Frederick Laurenzo

Date: 1-28-2013